Scott v. The State.

---

## SCOTT v. THE STATE.

| 42 | 73 |
| 55 | 246 |
| 42 | 73 |
| 58 | 37 |
| 42 | 73 |
| 68 | 463 |
| 42 | 73 |
| h73 | 35 |

1. LARCENY: *Indictment: Ownership of the property.*

   When the stolen property belongs to joint owners, the ownership must be laid in all of them, unless it was, when stolen, in the control and management of one of them; in which case the ownership may be laid in him.

2. CRIMINAL LAW: *Venue: Proof of.*

   If the State fail to prove the venue in a criminal case, but it is proven by the defendant in the progress of the trial, this will be sufficient.

APPEAL from *Monroe* Circuit Court.

Hon. M. T. SANDERS, Circuit Judge.

*S. P. Hughes*, for appellant.

The presumption that one in possession of stolen prop-
erty is the thief, is not one of law, and a weak one of
fact; is not at all conclusive, and of itself is not sufficient
for a conviction. *Boykin v. The State, 34 Ark., 443.*

When a man in whose possession stolen property is
found, gives a reasonable account of how he came by it, it
is incumbent on the prosecutor to show that the account is
false. *(3 Greenl. Ev., sec. 32.)* It is sufficient for the pris-
oner to raise a doubt of his guilt. *State v. Merrick, 19 Me.,
398; 1 Leading Cr. Cases, 360; 3 Greenl. Ev., 161.*

*C. B. Moore*, Attorney General, for the State.

In this case there was possession of stolen property and
*unexplained*, which is *prima facie* evidence of guilt, and not
rebutted. *Boykin v. The State, 34 Ark., 443.*

ENGLISH, C. J. Marion Scott was indicted in the Cir-
cuit Court of Monroe County, for grand larceny, the indict-
ment charging in substance that, on the fifteenth of March
1882, in said county, he stole a cow of the value of $15,
the property of Bony Robinson.

He was tried on plea of not guilty, convicted and sentenced
to the penitentiary for one year; refused a new trial, took
a bill of exceptions and obtained an appeal.

It is submitted by his counsel here, as in the motion for
a new trial, that the verdict was not warranted by the evi-
dence, and *Boykin v. The State, 34 Ark., 443,* is relied on.

1. LARCENY: Indictment: Ownership in the property.

I. The indictment alleged the stolen cow to be the
property of Bony Robinson.

On the trial it was proved that the cow in question be-
longed to Bony Robinson and his sister, Jessie Robinson;

that they inherited this cow with a large lot of cattle from their father, F. M. Robinson, and that Bony Robinson had the control of the cow.

When the goods belong to joint owners the ownership must be laid in all of them. But if one of them has such a separate possession as to give him a special property by reason thereof, it will not be ill to lay the ownership in him alone. *2 Bishop on Criminal Procedure, sec. 723.*

It appears from the evidence that though the cow was the joint property of Bony Robinson and his sister Jessie, yet she was under the control and management of the brother, and it was sufficient to lay the property in him.

II. The value of the cow was proven to be eighteen dollars. The State failed to prove by any witness examined on her part the venue as alleged. The witnesses introduced by her proved that the missing cow was found in possession of the appellant at his residence, about twelve miles from Bony Robinson's residence. But they did not state that the residence of appellant was in Monroe County. This omission, however, was cured by appellant, who introduced evidence showing that he resided in Duncan township, Monroe County.

III. The cow in question, as well as the other cattle inherited by Bony Robinson and his sister Jessie from their father, F. M. Robinson, was in his mark and brand, the mark being a swallow fork in the right ear and an underbit in the left ear, and the brand being O on the hip.

About the first of February, 1882, the premises of Bony Robinson being overflowed, the cattle belonging to him and his sister, marked and branded as above, were driven from home out of the overflow in the direction of the neighborhood where appellant resided.

Mrs. Richie, who lived within a few hundred yards of Bony Robinson's house, and who knew the cow in ques-

tion, went to the appellant's neighborhood some time in March, 1882, looking for some of her own cows that had been driven out of the overflow, and saw the cow in controversy in the possession of appellant, and told him that it was Robinson's cow. Defendant answered that the cow was not Robinson's, but belonged to a man down in Pine City. Witness noticed that the cow was then in the Robinson mark, with which she was familiar.

Afterwards, about the middle of March, 1882, Bony Robinson and his brother, F. J. Robinson, went to the residence of appellant and found the cow in his possession, but her marks had been changed by a fresh crop off of the right ear and a fresh hole in the left ear. Appellant said he got the cow of W. T. Washington, and claimed it as his own, but finally surrendered it to the Robinsons on their promise to return it to him if W. T. Washington said he sold such a cow to appellant. At that time Washington was out of the county, but afterwards returned, and after his return appellant did not lay any claim to the cow.

After Robinson had brought the cow home, Mrs. Richie saw it again, and testified that the marks had been changed. It was proved that Washington did not live at Pine City, and that the cow was not in his mark. It was also proved that appellant's mark, as recorded, was a smooth crop off the right ear and two swallow forks and a hole in the left ear, and that the mark of a near neighbor of his, as recorded, was a smooth crop off the right ear and a hole in the left ear.

So it seems that appellant in changing the mark of the cow did not use his own mark as recorded, but that of a near neighbor.

His statements about the ownership of the cow were contradictory. To Mrs. Richie he stated that the cow belonged to a man down in Pine City, and to the Robinsons he

claimed to have bought the cow from Washington, who did not live at or near Pine City. It is also probable from the evidence that he changed the mark of the cow after he was told by Mrs. Richie that it was Robinson's cow.

Appellant did not think proper to put his character in issue.

Upon the whole, the evidence made a stronger case against appellant than was made by the testimony against Boykin in *Boykin v. State, supra,* relied on by counsel for appellant, and we can not undertake to say that the evidence did not warrant the verdict.

It is not insisted here that either of the instructions moved for appellant and refused by the court should have been given, and the general charge of the court was certainly fair and unobjectionable.

Affirmed.